United States Court of Appeals
Fifth Circuit

**F I L E D**

May 19, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 05-10007

---

EDWARD M. MILKIE,

Plaintiff-Appellant,

versus

EXTREME NETWORKS, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before GARWOOD, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Edward M. Milkie (Milkie) appeals the district court's dismissal of his three claims against Extreme Networks, Inc. (Extreme). We affirm in part, vacate in part, and remand.

*Milkie's allegations of common-law fraud*

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The district court found that Milkie failed to plead fraudulent intent with specificity, and dismissed Milkie's claim of common-law fraud under Federal Rule of Civil Procedure 9(b). Liberally construing the complaint in Milkie's favor and taking as true all pleaded facts, we find that the district court erred in holding that Milkie did not adequately allege that Extreme's Director of Investor Relations, John Carvell (Carvell) knew his statements on September 27, 2002, that there was no material adverse news coming from Extreme, were untrue.

Specifically, we hold that Milkie sufficiently alleged that Carvell, on Friday, September 27, was aware of the approximate sales and earnings results for the quarter ending Sunday, September 29, as these results were contained in the press release issued sometime before 5:30 a.m. Pacific time on September 30, and the press release identified Carvell as one of the two points of contact for more information. We do not reach the question of whether the allegations are sufficient with respect to any statements made prior to September 27, and we note that the only specific dates of statements by Carvell that are alleged are September 18, September 26, and September 27.

We also note that there are no factual allegations concerning Extreme's stock price from September 19 through September 27, nor what its trading range was on September 30. We do not suggest that the complaint is sufficient to allow recovery for reduction in

stock price between September 18 and September 27.

We also note that the complaint proceeds on the assumption that revenue and earnings projections for the quarter ended September 29, 2002, were not met and that this was stated in the press release. The press release, however, said no such thing. Instead, it stated that the company expected revenue for the quarter to be approximately $100 million, as compared to $113 million in the previous quarter. In addition, based on this revenue, the company expected to report losses of $0.03 to $0.04 per share. The press release, however, does not say anything about whether this information was expected or adverse. Nothing in the complaint alleges that Extreme made any prior projections of the quarter's revenues or earnings. The record contains Extreme's Annual Report (Form 10-K) for the year ended June 30, 2002, which was filed approximately September 30, 2002, and Extreme's Quarterly Report (Form 10-Q) for the quarter ended March 31, 2002, which was filed approximately May 13, 2002. Neither of these documents suggests any projection of increased earnings or the like; indeed quite the opposite. As this was not addressed below, nor raised by Extreme below or on appeal, we leave its legal significance to the district court in the first instance on remand.

Finally, we are concerned that Milkie's allegations regarding Carvell's statements that there would be no materially adverse news forthcoming likely can only reasonably be understood as referring

3

to facts not publicly known, as otherwise, the stock market presumably would already reflect such information and the same information in the September 30 press release would not drive the price down. The complaint proceeds on the theory that the press release's reflection of earnings and sales was inconsistent with Carvell's earlier statements and made them false; in other words, that Carvell impliedly represented that earnings would be better than those announced on September 30. Yet, it appears that informing Milkie on September 26 or September 27 what the earnings would be, and for Milkie to sell his stock on that basis before the information was public, would violate SEC regulations. The district court did not address this issue and should do so in the first instance on remand. Although Extreme attempted to raise this issue to some extent below, it has not adequately briefed it on appeal. It may be that the issue is one best addressed on summary judgment or the trial on the merits.

*Milkie's allegations of negligent misrepresentation*

The district court explicitly did not distinguish between Milkie's claim for negligent misrepresentation and his claim for common-law fraud. The district court's dismissal of Milkie's claim for negligent misrepresentation is vacated and remanded for the reasons expressed above.

*Milkie's allegations of constructive fraud*

The dismissal of Milkie's claim for constructive fraud is

4

affirmed for the reasons stated by the district court.

For the foregoing reasons, the dismissal of Milkie's claims for common-law fraud and negligent misrepresentation is vacated and those claims are remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED IN PART and REMANDED.